```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                      GALVESTON DIVISION
```

| | | |
|---|---|---|
| HERMAN J. VAN NORMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. G-06-0719 |
| | § | |
| BAKER HUGHES, INC. | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Herman J. Van Norman, filed an action under the Jones Act, 46 U.S.C. § 30104(a), claiming that he was injured while working as a "seaman" for defendant, Baker Hughes, Inc. (Docket Entry No. 1). Pending before the court is defendant Baker Hughes' Motion for Summary Judgment (Docket Entry No. 29) and Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket Entry No. 33). For the reasons stated below, the court will grant Baker Hughes' motion.

### I. Factual Background

Baker Hughes provides oilfield services to oil-well operators. The services Baker Hughes provides include supplying the necessary equipment and personnel to assist in the removal of cuttings and other materials from wells. Many of these services are conducted offshore on either drilling rigs or oil platforms. Baker Hughes

neither charters nor owns or controls any of the drilling rigs or platforms for which it provides services.[1]

Baker Hughes hired Van Norman as a technician on February 5, 2002, and later promoted Van Norman to the position of technician supervisor. As a supervisor, Van Norman was responsible for training and supervising the work of other Baker Hughes technicians.[2] Although Van Norman spent much of his time at Baker Hughes working aboard the PRIDE GEORGIA, Van Norman was never assigned to any one rig. Where Van Norman worked was determined by Baker Hughes and the needs of its several customers. Over the course of his employment with Baker Hughes, Van Norman worked on fifteen different rigs controlled by ten different companies.[3] Van Norman's work on a particular platform lasted as little as a day in some instances or as long as several weeks, and was subject to change at anytime.[4] Moreover, no matter which rig he worked on, Van Norman was never considered a part of the rig's crew, nor did he ever take orders or instructions from the rig's crew.

---

[1] Defendant's Motion for Summary Judgment, Docket Entry No. 29, Exhibit D, Affidavit of Donald Steinborn. The court will hereafter refer to both drilling rigs and platforms as "rigs."

[2] Id., Exhibit F, Excerpts of Herman J. Van Norman, Jr.'s Personnel File.

[3] See id., Exhibit G, List of Jobs Performed by Herman J. Van Norman; see also id., Exhibit C, Deposition of Herman J. Van Norman pp. 80-85;

[4] See id., Exhibit D, Steinborn Aff.; id., Exhibit G, List of Jobs Performed by Herman J. Van Norman.

As a technician and supervisor on these various rigs, Van Norman was required to lift heavy objects.[5] Van Norman alleges that this repetitive motion eventually caused debilitating and irreparable injuries to his arms and back, which prevented him from working as a technician supervisor.[6] Accordingly, Van Norman brought suit against Baker Hughes under the Jones Act, claiming that he was a "seaman."[7]

## II.   Summary Judgment Standard

Summary judgment is proper under Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of production "to point out the absence of evidence supporting the nonmovant's case." Malacara v. Garber, 353 F.3d 393, 404 (5th Cir. 2003) (citing Celotex Corp. v. Catrett, 106 S. Ct. 2548 (1986)).  If the moving party satisfies that burden, "the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action."  Id.  "It is not enough

---

[5] Id., Exhibit C, Van Norman Depo. pp. 93-105.

[6] Id. at 90-92.

[7] See Plaintiff's Second Amended Complaint, Docket Entry No. 23, ¶ 6.

for [the nonmoving party] to rest on mere conclusory allegations or denials in his pleadings."  Park v. Stockstill Boat Rentals, Inc., 492 F.3d 600, 605 (5th Cir. 2007).

"Because the determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact, it is usually inappropriate to take the question from the jury." Crane Operators, Inc. v. Baye (In re Endeavor Marine, Inc.), 234 F.3d 287, 290 (5th Cir. 2000).  However, "'[s]ummary judgment is mandated . . . where the facts and the law will reasonably support only one conclusion.'"  Id. (quoting Harbor Tug and Barge Co. v. Papai, 117 S. Ct. 1535, 1540 (1997)).

### III.  Analysis

Baker Hughes argues that it is entitled to summary judgment because Van Norman has failed to establish that he is a "seaman" within the meaning of the Jones Act.[8]  The Jones Act allows "[a] seaman injured in the course of employment . . . to bring a civil action at law, with the right of trial by jury, against the employer."  46 U.S.C. § 30104(a).[9]  "Seaman" is a term of art that courts have interpreted narrowly "to separate the sea-based maritime employees who are entitled to Jones Act protection from

---

[8]Defendant's Motion for Summary Judgment, Docket Entry No. 29, pp. 14-18.

[9]Although 46 U.S.C. app. § 688(a) (repealed 2006) applied at the time of Van Norman's injury, there is no material difference between the prior act and the current act.

those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." Chandris, Inc. v. Latsis, 115 S. Ct. 2172, 2190 (1995). A plaintiff is a "seaman" within the meaning of the Jones Act only if (1) the plaintiff's duties "contribute to the function of the vessel or the accomplishment of its mission," and (2) the plaintiff has a connection to a vessel or fleet of vessels "that is substantial in . . . its duration and its nature." Id. at 2194. The party claiming status as a Jones Act seaman bears the burden of proof. Becker v. Tidewater, Inc., 335 F.3d 376, 390 (5th Cir. 2003).

Baker Hughes does not dispute that Van Norman has satisfied the first element. The evidence is clear that his duties as a technician and supervisor contributed to the function and mission of the rigs he worked on.[10] Baker Hughes argues, however, that Van Norman has not produced sufficient evidence to establish a genuine fact issue as to whether he had a substantial connection to either a vessel or a fleet of vessels.[11]

Although he initially alleged a permanent connection to the PRIDE GEORGIA,[12] Van Norman admitted in his deposition that he was never permanently assigned to the PRIDE GEORGIA.[13] Moreover,

---

[10] See, e.g., id., Exhibit C, Van Norman Depo. pp. 93-101 (describing a technician's responsibilities).

[11] Id. at 14-18.

[12] Plaintiff's First Amended Complaint, Docket Entry No. 15, ¶ 6.

[13] Defendant's Motion for Summary Judgment, Docket Entry No. 29, Exhibit C, Van Norman Depo. pp. 80-85.

-5-

through employment records and affidavits that Van Norman does not dispute, Baker Hughes has demonstrated that Van Norman was not permanently assigned to the PRIDE GEORGIA.[14] Thus, as Van Norman tacitly concedes in his response,[15] the disposition of Baker Hughes' summary judgment motion turns on whether Van Norman has produced sufficient evidence to create a genuine issue of fact as to whether he had a substantial connection to "a fleet of vessels."

"Fleet of vessels" is a term of art defined as "an identifiable group of vessels acting together or under one control." Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1074 (5th Cir. 1986). In Ardleigh v. Schlumberger Ltd., 832 F.2d 933 (5th Cir. 1987), the Fifth Circuit held that an itinerant employee who worked on thirty different vessels, none of which were owned or controlled by the employer, was not a "seaman" as a matter of law because the employee failed to produce any evidence that the several vessels he worked on "act[ed] together or under one control." Id. at 934 (internal quotations omitted). In Hufnagel v. Omega Service Industries, Inc., 182 F.3d 340 (5th Cir. 1999), the court held that an employee was not a seaman when he worked for thirteen different clients on twenty-six different vessels "whose

---

[14]See, e.g., id., Exhibit D, Steinborn Aff.; id., Exhibit G, List of Jobs Performed by Herman J. Van Norman, Jr.

[15]Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 33, pp. 4-5 (arguing only that Van Norman has a connection with a fleet of vessels).

only connection was that they contracted with the same third party, [the plaintiff's employer]." Id. at 347-48.

It is undisputed that Baker Hughes did not own or control any of the rigs Van Norman worked on while employed with Baker Hughes.[16] Moreover, there is nothing in the record that indicates that the fifteen different rigs that Van Norman serviced, which were operated by ten different companies, acted together or were subject to common control. The only apparent connection between the rigs is that they all contracted with Baker Hughes for services.[17]

Van Norman does not dispute these facts. Instead, he argues that, while Baker Hughes has shown that the rigs Van Norman worked on were *operated* by several different companies, Baker Hughes has not shown who owned the rigs Van Norman worked on.[18] Van Norman therefore argues that a genuine fact issue exists because if the same company that owned the PRIDE GEORGIA owned the other rigs he worked on, Van Norman could be found to have worked on a fleet of vessels.[19]

---

[16]See, e.g., id., Exhibit D, Steinborn Aff.; id., Exhibit G, List of Jobs Performed by Herman J. Van Norman, Jr.

[17]See, e.g., id., Exhibit D, Steinborn Aff.; id., Exhibit G, List of Jobs Performed by Herman J. Van Norman, Jr.

[18]See id., Exhibit G, List of Jobs Performed by Herman J. Van Norman, Jr.

[19]Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 33, p. 4.

Baker Hughes has pointed to an absence of evidence that Van Norman had a substantial connection to an identifiable group of vessels acting together or under one control.[20] To raise a genuine issue of material fact, Van Norman must do more than speculate about what the evidence might show.  He must submit or identify evidence in the record that supports his contention that the rigs he serviced were under common ownership or control.  Because he has not done so, the court will grant Baker Hughes' motion for summary judgment.[21]

## IV. Conclusion and Order

For the reasons explained above, Defendant's Motion for Summary Judgment (Docket Entry No. 29) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 14th day of December, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[20] Moreover, with its Reply, Docket Entry No. 34, defendant submits the Declaration of Ben Stonecipher, which states the rigs on which Van Norman worked were owned by nine different companies.

[21] To the extent that plaintiff is also asserting a claim for unseaworthiness under general maritime law, he fares no better because "only those doing a seaman's work are covered by the warranty of seaworthiness[.]" Palmer v. Fayard Moving and Transp. Corp., 930 F.2d 437, 440-41 (5th Cir. 1991); see also Park, 492 F.3d at 604 ("A vessel is unseaworthy only if it presents an unreasonable risk of harm to the seaman."). Therefore, because the court concludes Van Norman is not a seaman, he has no unseaworthiness claim under general maritime law.